IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| LARECIA HINES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 25-cv-00306-LKG |
| v. | ) | |
| | ) | Dated: March 19, 2026 |
| LEAFGUARD HOLDINGS INC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## <u>MEMORANDUM OPINION</u>

## I.    INTRODUCTION

In this employment discrimination case, the Plaintiff, LaRecia Hines, brings race, sex and pregnancy-based discrimination and retaliation claims against the Defendant, LeafGuard Holdings Inc. ("LeafGuard"), arising from her employment with LeafGuard, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. ("Title VII") and the Pregnancy Discrimination Act of 1978 (the "PDA"), 42 U.S.C. § 2000e(k). *See generally* ECF No. 18. LeafGuard has filed a motion to dismiss the amended complaint, pursuant to Fed. R. Civ. P. 12(b)(6). ECF No. 22. The motion is fully briefed. *See id.*; ECF Nos. 23, 24, 25, 27, 34 and 37. No hearing is necessary to resolve the motion. *See* L.R. 105.6 (D. Md. 2025). For the reasons that follow, the Court: (1) **GRANTS-in-PART** and **DENIES-in-PART** LeafGuard's motion to dismiss (ECF No. 22) and (2) **DISMISSES** Count I of the amended complaint (ECF No. 18).

## II.   FACTUAL AND PROCEDURAL BACKGROUND[1]

### A.    Factual Background

In this employment discrimination case, the Plaintiff brings discrimination and retaliation claims against LeafGuard, arising from her employment with LeafGuard, pursuant to Title VII and the PDA. *See generally* ECF No. 18. In the amended complaint, the Plaintiff asserts the

---

[1] The facts recited in this memorandum opinion are taken from the amended complaint; LeafGuard's motion to dismiss and memorandum in support thereof; the Plaintiff's response in opposition thereto; and the parties' sur-replies. ECF Nos. 18, 22, 23, 24, 25, 27, 29, 34 and 37.

following claims against LeafGuard: (1) Violation of the PDA (Count I); (2) Violation of Title VII (race/color discrimination/hostile work environment) (Count II); (3) Violation of Title VII (sex discrimination/hostile work environment) (Count III); (4) Retaliation in Violation of the PDA (Count IV); (5) Title VII Retaliation (race and color) (Count V); and (6) Title VII Retaliation (sex).  ECF No. 18 at 11–19.  As relief, the Plaintiff seeks, among other things, injunctive relief and to recover monetary damages, punitive damages and attorney's fees from LeafGuard.  *Id*. at Prayer for Relief.

<u>The Parties</u>

Plaintiff LaRecia Hines identifies as an African American (Black) female and was employed by LeafGuard.  *Id.* at ¶¶ 13, 14 and 17.

Defendant LeafGuard is a national gutter maintenance system company that is registered to do business in the State of Maryland.  *Id*. at ¶ 4.

<u>The Plaintiff's Employment History</u>

As background, the Plaintiff identifies as an African American (Black) female.  *Id*. at ¶ 14.  In February 2022, the Plaintiff began her employment with LeafGuard as a Production Manager in Training.  *Id.* On or about August 1, 2022, the Plaintiff was promoted to the position of Production Manager.  *Id*. at ¶ 17.

In the amended complaint, the Plaintiff alleges that, "[a]t all times material, [she] performed at or above [LeafGuard's] legitimate expectations, including the Company's decisionmaker [Chandler Gentry-Coyler]."  *Id.* at ¶ 16.  In this regard, the Plaintiff alleges that she earned merit-based raises within months of her hire, and she was promptly promoted to the Production Manager position.  *Id.* at ¶¶ 15 and 17.

The Plaintiff also alleges that her supervisor, Mr. Gentry-Coyler, expressed that he was pleased with her work performance via text message on August 30, 2022.  *Id.* at ¶ 18.  In this regard, the Plaintiff alleges that Mr. Gentry-Coyler sent her a series of text messages celebrating the Beltsville LeafGuard facility's excellent performance in late September 2022.  *Id.* at ¶ 19.  The Plaintiff alleges that the improvement of the Beltsville LeafGuard facility under her leadership was notable, because she "far exceeded the performance of her predecessor, a man, who was reprimanded and disciplined several times but never terminated."  *Id.* at ¶ 21.  The Plaintiff further alleges LeafGuard's President praised her work and leadership skills during a call held on September 15, 2022.  *Id.* at ¶ 20.

2

The Plaintiff alleges that, shortly after Mr. Gentry-Coyler became the General Manager of LeafGuard's Washington, DC branch in July 2022, he began to subject her to racist and sexist remarks and gestures. *Id.* at ¶ 23. Specifically, the Plaintiff alleges that Mr. Gentry-Coyler once commented "women can't do that," when she was carrying a ladder at a job site. *Id.* The Plaintiff also alleges that Mr. Gentry-Coyler expressed incredulity about a Black female being in the construction industry. *Id.* In addition, the Plaintiff alleges that Mr. Gentry-Coyler told other LeafGuard employees that her name was a "black ghetto name." *Id.*

The Plaintiff alleges that she asked Mr. Gentry-Coyler to refrain from such sexist and race-based humor and to treat her and other female and minority employees in a professional manner. *Id.* at ¶ 25. But the Plaintiff alleges that Mr. Gentry-Coyler's "disparagement and race and sex [-] based attacks continued." *Id.* at ¶ 26. And so, the Plaintiff contends that Mr. Gentry-Coyler's conduct created a hostile work environment, because of the "frequency and severity" of his conduct. *Id.* at ¶ 27.

Lastly, the Plaintiff alleges that she was subjected to retaliation after she engaged in certain protected activity. In this regard, the Plaintiff alleges that Mr. Gentry-Coyler retaliated against her for complaining about his workplace conduct, by blocking her access to scheduling and billing systems that were critical to the performance of her job duties. *Id.* at ¶ 29.

The Plaintiff also alleges that she contacted the Director of Production at LeafGuard, Matthew Bell, to complain about Mr. Gentry-Coyler's conduct on September 6, 2022, and that she later contacted LeafGuard's Regional Manager, Tim Spring, to discuss these concerns at Mr. Bell's suggestion. *Id.* at ¶ 30. But the Plaintiff alleges that Mr. Gentry-Coyler's discriminatory behavior continued. *Id.*

The Plaintiff alleges that, on or about October 5, 2022, she informed Mr. Gentry-Coyler and LeafGuard's Human Resources Officer, Tim O'Connell, that she was pregnant and would be requesting pregnancy leave. *Id.* at ¶ 31. In this regard, the Plaintiff alleges that LeafGuard received correspondence from New York Life regarding her pregnancy leave request on or around October 24, 2022. *Id.* at ¶ 32. The Plaintiff also alleges that she had a series of recorded video calls with representatives of LeafGuard on October 26 and 27, 2022, during which she complained about the sex and race discrimination that she was experiencing at work. *Id.* at ¶ 35.

3

Lastly, the Plaintiff alleges that LeafGuard terminated her employment on November 16, 2022.[2] *Id.* at ¶ 36.

The Plaintiff's Charge Of Discrimination

The Plaintiff filed a Charge of Discrimination (the "Charge") with the Equal Employment Opportunity Commission ("EEOC") on or about February 3, 2023.  *Id.* at ¶ 6.  In the Charge, the Plaintiff alleges that she was a victim of discrimination on the basis of her gender, race, color and pregnancy and that she was also a victim of retaliation.  *Id.*  The Plaintiff states in the Charge that she believes that she was terminated and replaced by a non-disabled, male employee.  ECF No. 29 at 4.  On November 13, 2024, the EEOC issued its determination and a Notice of Rights. ECF No. 18 at ¶ 7.

The Plaintiff's Allegations

The Plaintiff asserts the following six claims in the amended complaint: (1) Violation of the PDA (Count I); (2) Violation of Title VII (race/color discrimination/hostile work environment) (Count II); (3) Violation of Title VII (sex discrimination/hostile work environment) (Count III); (4) Retaliation in Violation of the PDA (Count IV); (5) Title VII Retaliation (race and color) (Count V); and (6) Title VII Retaliation (sex).  ECF No. 18 at 11–19. With regard to her PDA discrimination claim in Count I of the amended complaint, the Plaintiff alleges that LeafGuard discriminated against her, in violation of the PDA, by engaging in unlawful employment practices and by terminating her employment, because of her pregnancy. *Id.* at ¶¶ 46–49.

In Count II of the amended complaint, the Plaintiff alleges that LeafGuard discriminated against her on the basis of her race and color, in violation of Title VII, because she objected to Mr. Gentry-Coyler's derogatory remarks about her race and the frequency of those remarks created a hostile work environment, and so LeafGuard subsequently terminated her employment. *Id.* at ¶¶ 52–56.  In Count III of the amended complaint, the Plaintiff alleges that LeafGuard also discriminated against her on the basis of her sex in violation of Title VII, because she objected to

---

[2] The parties disagree about whether the Plaintiff was fired, or voluntarily resigned her position with LeafGuard.  LeafGuard maintains that the Plaintiff voluntarily resigned her position, effective November 16, 2022.  ECF Nos. 23 at 14 and 23-2.  But the Plaintiff contends that LeafGuard "manufactured and/or manipulated evidence" to show that she voluntarily resigned her position and that she was involuntarily terminated.  ECF No. 8 at ¶¶ 39–40.

Mr. Gentry-Coyler's derogatory remarks about her sex and the frequency and severity of this conduct created a hostile work environment and LeafGuard subsequently terminated her employment. *Id.* at ¶ 61–62.

With regards to the Plaintiff's retaliation claims, the Plaintiff alleges in Count IV of the amended complaint, that LeafGuard retaliated against her in violation of the PDA, by terminating her employment after she requested pregnancy leave and "objected to discrimination because of her pregnancy." *Id.* at ¶ 66. In Count V of the amended complaint, the Plaintiff alleges that LeafGuard also retaliated against her on the basis of her race and color, in violation of Title VII, by terminating her employment after she complained about Mr. Gentry-Coyler's conduct. *Id*. at ¶¶ 70–73.

Lastly, in Count VI of the amended complaint, the Plaintiff alleges that LeafGuard retaliated against her on the basis of her sex in violation of Title VII, by terminating her employment after she objected to Mr. Gentry-Coyler's disparaging remarks. *Id.* at ¶¶ 77–79. And so, the Plaintiff seeks, among other things, certain injunctive relief and to recover monetary damages, punitive damages and attorney's fees from LeafGuard. *Id*. at Prayer for Relief.

### B.    Procedural Background

The Plaintiff commenced this matter on January 30, 2025. ECF No. 1.

On April 28, 2025, LeafGuard filed a motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), and a memorandum in support thereof. ECF Nos. 16 and 16-1.

The Plaintiff filed an amended complaint on May 12, 2025. ECF No. 18. On June 11, 2025, LeafGuard filed a renewed motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), and a memorandum in support thereof. ECF Nos. 22 and 23.

On June 25, 2025, the Plaintiff filed a response in opposition to LeafGuard's motion. ECF Nos. 24 and 25. On July 3, 2025, LeafGuard filed a reply brief. ECF No. 27.

On July 15, 2025, the Plaintiff filed a sur-reply. ECF No. 34. On July 22, 2025, LeafGuard filed a sur-reply. ECF No. 37.

LeafGuard's motion to dismiss having been fully briefed, the Court resolves the pending motion.

### III.   LEGAL STANDARDS

#### A.   Fed. R. Civ. P. 12(b)(6) And 12(d)

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must allege enough facts to state a plausible claim for relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible when "the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556). When evaluating the sufficiency of a plaintiff's claims under Fed. R. Civ. P. 12(b)(6), the Court accepts factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff.  *Nemet Chevrolet, Inc. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005) (citations omitted).  But, the complaint must contain more than "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement."  *Nemet Chevrolet*, 591 F.3d at 255.

In addition, a motion to dismiss under Fed. R. Civ. P. 12(b)(6) "must be treated as one for summary judgment" when "matters outside the pleadings are presented" to the Court.  *See* Fed. R. Civ. P. 12(d).  But, the United States Court of Appeals for the Fourth Circuit has held that documents are not considered to be matters outside of the pleadings if they are "explicitly incorporated into the complaint by reference" or are "integral to the complaint and there is no dispute about the document's authenticity."  *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

#### B.   Title VII

Title VII prohibits employment discrimination based on race, color, religion, sex and national origin.  *See* 42 U.S.C. § 2000e.  Title VII requires that a plaintiff file a charge of discrimination with the EEOC before filing suit in this Court.  42 U.S.C. § 2000e-5(f)(1) (permitting civil suit by the "person claiming to be aggrieved" after filing of a charge with the EEOC and upon receipt of a right-to-sue letter); *see also, e.g.*, *Puryear v. Cnty. of Roanoke*, 214 F.3d 514, 518 (4th Cir. 2000) ("[T]he aggrieved person may initiate a civil action based on the Title VII claims made in her EEOC charge only after receipt of a right-to-sue letter."); *Miles v. Dell, Inc.*, 429 F.3d 480, 491 (4th Cir. 2005).  This "exhaustion requirement ensures that the

employer is put on notice of the alleged violations so that the matter can be resolved out of court if possible." *Miles*, 429 F.3d at 491.

Title VII also requires that an aggrieved party file a charge with the EEOC "within one hundred and eighty days after the alleged unlawful employment practice occurred." 42 U.S.C. §2000e–5(e)(1). If a plaintiff "fails to file an administrative charge with the EEOC within one hundred eighty [] days after an alleged discriminatory act occurs (or three hundred [] days if the aggrieved person presented the claim to a state deferral agency), then the EEOC charge is not considered timely filed." *Hentosh v. Old Dominion Univ.*, 767 F.3d 413, 417 (4th Cir. 2014) (citing 42 U.S.C. § 2000e-5(e)(1)).

The United States Court of Appeals for the Fourth Circuit has recognized that the exhaustion requirement under Title VII "is not simply a formality to be rushed through so that an individual can quickly file [a] subsequent lawsuit." *Chacko v. Patuxent Inst.*, 429 F.3d 505, 510 (4th Cir. 2005). Rather, together with the agency investigation and settlement process it initiates, this requirement "'reflects a congressional intent to use administrative conciliation as the primary means of handling claims, thereby encouraging quicker, less formal, and less expensive resolution of disputes.'" *Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 407 (4th Cir. 2013) (quoting *Chris v. Tenet*, 221 F.3d 648, 653 (4th Cir. 2000)). The United States Supreme Court has also held that Title VII's charge-filing requirement "is a processing rule, albeit a mandatory one, not a jurisdictional prescription delineating the adjudicatory authority of courts." *Fort Bend Cnty, Tex. v. Davis*, 587 U.S. 541, 551 (2019). And so, the Court cannot consider matters that were not properly raised during the EEOC process, even when a plaintiff has filed a timely claim with the EEOC. *See, e.g.*, *Jones v. Calvert Grp.*, 551 F.3d 297, 300 (4th Cir. 2009) ("'Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit.'" (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996))); *Miles*, 429 F.3d at 491.[3]

---

[3] To determine whether a plaintiff has "properly alleged [a claim] before the EEOC" in a manner satisfying the exhaustion requirement, courts "may look only to the charge filed with that agency." *Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 408 (4th Cir. 2013); *see also Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962–63 (4th Cir. 1996) ("The allegations contained in the administrative charge of discrimination generally operate to limit the scope of any subsequent judicial complaint."); *Chacko v. Patuxent Inst.*, 429 F.3d 505, 506 (4th Cir. 2005) ("This charge frames the scope of future litigation.").

There are two methods for proving intentional discrimination in employment under Title VII: (1) through direct or indirect evidence of intentional discrimination, or (2) through circumstantial evidence under the three-step, burden-shifting scheme set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973).  For the first method, an employee may utilize "ordinary principles of proof using any direct or indirect evidence relevant to and sufficiently probative of the issue."  *Brinkley v. Harbour Recreation Club*, 180 F.3d 598, 606–07 (4th Cir. 1999) (quoting *Tuck v. Henkel Corp.*, 973 F.2d 371, 374 (4th Cir. 1992)).

If direct or indirect evidence of intentional discrimination is lacking, a plaintiff may proceed under *McDonnell Douglas*.  *See Tuck*, 973 F.2d at 374.  Under the *McDonnell Douglas* framework, a plaintiff must first establish a *prima facie* case of discrimination.  *See McDonnell Douglas Corp.*, 411 U.S. at 802.  If a plaintiff establishes a *prima facie* case of discrimination, the burden of production shifts to the defendant to present a legitimate, nondiscriminatory reason for the adverse employment action alleged.  *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000).  If the defendant succeeds in doing so, that showing will rebut the presumption of discrimination raised by the plaintiff's *prima facie* case.  *See Stokes v. Westinghouse Savannah River Co.*, 206 F.3d 420, 429 (4th Cir. 2000) (citing *Tex. Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 n. 10 (1981)).  The plaintiff then must "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination."  *Burdine*, 450 U.S. at 253.  And so, "[t]he plaintiff always bears the ultimate burden of proving that the employer intentionally discriminated against her."  *Evans v. Tech. Applications & Serv. Co.*, 80 F.3d 954, 959 (4th Cir. 1996) (citing *Burdine*, 450 U.S. at 253).

Relevant to the pending motion to dismiss, to state a hostile work environment claim under Title VII, a plaintiff "must offer facts that plausibly support inferences that 'she was subjected to (1) unwelcome conduct, (2) based on her race [or national origin] or sex, that was (3) severe or pervasive enough to make her work environment hostile or abusive and (4) imputable to [ ] her employer.'"  *Marie Laurent-Workman v. Wormuth*, 54 F.4th 201, 211 (4th Cir. 2022) (quoting *Bazemore v. Best Buy*, 957 F.3d 195, 200 (4th Cir. 2020)).  The Plaintiff must also allege that her protected characteristic under Title VII was the "but for" cause of the alleged harassment.  *Id.*; *see also Young v. Giant Food Stores, LLC*, 108 F. Supp. 3d 301, 310 (D. Md. 2015) (finding that

8

the plaintiff must also allege facts to present a particularized basis for alleging that discriminatory conduct was because of membership in a protected class).

In addition, a plaintiff may establish a *prima facie* case of discrimination based upon her race/color or sex by showing that: (1) she is a member of a class protected by Title VII; (2) her job performance was satisfactory at the time of the adverse employment action; (3) she was subjected to an adverse employment action; and (4) similarly situated employees outside her class received more favorable treatment. *See Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010); *see also Swaso v. Onslow Cnty. Bd. of Educ.*, 698 F. App'x 745, 747 (4th Cir. 2017) (a Title VII plaintiff must show: (1) she is a member of a protected class; (2) she suffered an adverse employment action; (3) she was performing her job satisfactorily at the time of the adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of unlawful discrimination.).  An adverse employment action is one that affects employment or alters the conditions of the workplace. *Burlington N. and Santa Fe Ry., Co. v. White*, 548 U.S. 53, 62 (2006).

Lastly, Title VII's anti-retaliation provision makes it unlawful "for an employer to discriminate against [an] . . . employee[] . . . because he has opposed any practice . . . or because he has made a charge, testified, assisted, or participated in any manner in an investigation . . . ." 42 U.S.C. § 2000e-3.  In this regard, the Fourth Circuit has held that a Title VII plaintiff "may prove a Title VII retaliation claim either through direct evidence of retaliatory animus or via the application of the *McDonnell Douglas* burden-shifting framework." *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 122 (4th Cir. 2021).  To that end, a Title VII plaintiff may prevail under the burden-shifting framework by showing that he: (1) "engaged in protected activity"; (2) "h[er] employer took an adverse action against h[er]"; and (3) that "a causal relationship exist[s]" between the plaintiff's protected activity and the employer's adverse action. *See id*.  With regard to the showing of an adverse action, the Supreme Court has also held that a Title VII plaintiff "must show that a reasonable employee would have found the challenged action materially adverse . . . which . . . means it . . . might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *White*, 548 U.S. at 68; *see also Laurent-Workman*, 54 F.4th at  213 (internal quotations omitted) (explaining that the Supreme Court widened the scope of conduct that can constitute an adverse action by an employer from solely conduct that affects an employee's "compensation, terms, conditions, or privileges of employment").

9

If a Title VII plaintiff establishes a *prima facie* case of retaliation, "the burden shifts to the employer to show that it took adverse action for a legitimate non-retaliatory reason." *Roberts*, 998 F.3d at 122 (citation omitted).  And so, if the employer provides a legitimate non-retaliatory reason, "the burden shifts back to the plaintiff to rebut the employer's evidence by demonstrating the employer's purported non-retaliatory reasons were pretext for discrimination." *Id.*

### C. The Pregnancy Discrimination Act

Lastly, the Pregnancy Discrimination Act is an amendment to Title VII, that prohibits discrimination on the basis of pregnancy, childbirth or related medical conditions.  42 U.S.C. § 2000e(k).  A claim of discrimination on the basis of pregnancy is analyzed in the same manner as a sex discrimination claim brought under Title VII.  *Holmes v. e.spire Commc'ns*., 135 F. Supp. 2d 657, 661 (D. Md. 2001).

## IV.   LEGAL ANALYSIS

LeafGuard has moved to dismiss this employment discrimination case, pursuant to Fed. R. Civ. P. 12(b)(6), for several reasons.  First, LeafGuard argues that the Court should dismiss the Plaintiff's discrimination claims in Counts I, II and III of the amended complaint, because: (1) the Plaintiff fails to allege facts to show that she was performing her job satisfactorily at the time of her termination; (2) the Plaintiff's voluntary resignation is not an adverse employment action; and (3) the Plaintiff fails to allege that her separation from employment arose under circumstances giving rise to an inference of discrimination.  ECF No. 23 at 11–21.  Second, LeafGuard argues that the Court should also dismiss the Plaintiff's retaliation claims in Counts IV, V and VI of the amended complaint, because the Plaintiff fails to plead the elements of a retaliation claim.  *Id*. at 22–26.  And so, LeafGuard requests that the Court dismiss the amended complaint.  *Id*. at 27.

The Plaintiff counters that the Court should not dismiss her discrimination claims, because she plausibly alleges a satisfactory job performance, an adverse employment action and that the termination of her employment with LeafGuard occurred under circumstances that give rise to an inference of discrimination in the amended complaint.  ECF No. 25 at 6–7.  The Plaintiff also argues that dismissal of her hostile work environment claims is not warranted, because she alleges facts to show that she was subjected to unwelcome conduct based on her race and sex, that was severe or pervasive, in the amended complaint.  *Id*. at 11–12.  In addition, the Plaintiff argues that the Court should not dismiss her retaliation claims, because she alleges facts in the

amended complaint to show that: (1) she engaged in protected activity when she opposed Mr. Gentry-Coyler's discrimination, reported this conduct, notified LeafGuard of her pregnancy and New York Life provided LeafGuard with formal notice of her maternity leave request; (2) she suffered an adverse employment action; and (3) a causal connection exists between her protected activities and the termination of her employment. *Id*. at 13–14. And so, the Plaintiff requests that the Court deny LeafGuard's motion. *Id*. at 14.

For the reasons that follow, a careful reading of the amended complaint shows that the Plaintiff does not allege facts to show that her job performance was satisfactory at the time of the termination of her employment, to support her employment discrimination claim under the PDA. But the Plaintiff has shown that she administratively exhausted her hostile work environment claims in Counts II and III of the amended complaint and that the amended complaint contains sufficient factual allegations to support these claims. The amended complaint also makes clear that the Plaintiff alleges sufficient facts to support the elements of her retaliation claims under Title VII and the PDA, in Counts IV, V and VI of the amended complaint. And so, the Court (1) GRANTS-in-PART and DENIES-in-PART LeafGuard's motion to dismiss (ECF No. 22) and (2) DISMISSES Count I of the amended complaint.

### A.    The Court Accepts As True The Plaintiff's Allegation Regarding Her Termination

As a preliminary matter, the Court accepts as true the Plaintiff's allegation that LeafGuard terminated her employment on November 16, 2022. When evaluating the sufficiency of the Plaintiff's claims under Fed. R. Civ. P. 12(b)(6), the Court accepts the factual allegations in the amended complaint as true and construes them in the light most favorable to the Plaintiff. *Nemet Chevrolet, Inc. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005). In the amended complaint, the Plaintiff alleges that LeafGuard terminated her employment on November 16, 2022, after she complained about discriminatory conduct in the workplace. ECF No. 18 at ¶¶ 36 ("On November 16, 2022, approximately six weeks after Plaintiff initially advised Defendant (including the decisionmaker, Mr. Gentry-Coyler) of her pregnancy and request for leave and complained about gender and race discrimination, Mr. Gentry Coyler terminated Ms. Hines by video conference call.") and 39 ("Plaintiff's employment status was changed to voluntarily resigned two and a half months after her separation. [] The audit trail shows Plaintiff's

employment status was changed on January 30, 2023").  But LeafGuard argues that the Plaintiff voluntarily resigned from her position, and it has filed a personnel action form ("PAF") to show that the Plaintiff voluntarily resigned her position.  ECF No. 23 at 20, 23-2 and 28.

The Court need not resolve this factual dispute to resolve LeafGuard's motion to dismiss, because the Court must accept the Plaintiff's factual allegation regarding the termination of her employment as true at this stage in the litigation.  Fed. R. Civ. P. 12(b)(6).  And so, the Court will accept that LeafGuard terminated the Plaintiff's employment on November 16, 2022, for the purpose of resolving LeafGuard's motion to dismiss.[4]

### B.    The Court Dismisses The Plaintiff's PDA Discrimination Claim

Turning to the merits of the Plaintiff's PDA discrimination claim in Count I of the amended complaint, LeafGuard argues with persuasion that the Court must dismiss this claim, because the Plaintiff fails to allege facts to show that she was meeting LeafGuard's legitimate expectations at the time of her termination.  To state a discrimination claim under the PDA, the Plaintiff must allege facts to show, among other things, that she was "performing [her] job duties at a level that met [her] employer's legitimate expectations at the time of the adverse employment action."  *Lettieri v. Equant, Inc.*, 478 F.3d 640, 646 (4th Cir. 2007); *see Mason v. Montgomery Cty.*, No. 13-1077, 2015 WL 3891808, at *5 (D. Md. June 23, 2015).  And so, if the Plaintiff fails to allege facts to show a satisfactory job performance at the time of her termination, she cannot prevail on a PDA discrimination claim.

In this case, a careful reading of the complaint makes clear that the Plaintiff has not alleged any facts to show that she was meeting LeafGuard's legitimate expectations when she was terminated on November 16, 2022.  Notably, the Plaintiff generally alleges in the amended complaint that, "[a]t all times material, [she] was qualified to perform her job duties within the legitimate expectations of Defendant."  ECF No. 18 at ¶ 10.  The Plaintiff also alleges that: (1) she was promoted to the position of Production Manager on or about August 1, 2022; (2) Mr. Gentry-Coyler sent a text expressing pleasure with her performance on August 30, 2022; and (3) LeafGuard's President praised her work on September 15, 2022.  *Id.* at ¶¶ 16, 17, 18, 19 and 20.

---

[4] Because the Court does not need to resolve the parties' factual dispute regarding whether the Plaintiff's employment was terminated, the Court also need not consider the PAF attached as an exhibit to LeafGuard's the motion to dismiss.  Fed. R. Civ P. 12(d); *see also Brennan v. Deluxe Corp.*, 361 F. Supp. 3d 494, 501 (D. Md. 2019) (discussing the limitation of using exhibits not attached to the complaint or incorporated into the complaint by reference).

But the Plaintiff's general allegation of satisfactory job performance "at all times material" is conclusory and fails to meet the pleading standards under Rule 12(b)(6).  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).  The Plaintiff's remaining factual allegations, accepted as true, show a satisfactory job performance up to September 15, 2022.  But, the Plaintiff alleges that she was terminated two months later, on November 16, 2022.

Given this, the Plaintiff has not alleged facts to show a satisfactory job performance on the date of the alleged adverse employment action in this case.  And so, the Court DISMISSES the Plaintiff's PDA discrimination claim in Count I of the amended complaint.[5]

### C.  The Plaintiff States Hostile Work Environment Claims

LeafGuard's argument in support of dismissing the Plaintiff's hostile work environment claims in Counts II and III of the amended complaint is less convincing.  To state a hostile work environment claim under Title VII, the Plaintiff "must offer facts that plausibly support inferences that 'she was subjected to (1) unwelcome conduct, (2) based on her race [or national origin] or sex, that was (3) severe or pervasive enough to make her work environment hostile or abusive and (4) imputable to [ ] her employer.'"  *Marie Laurent-Workman v. Wormuth*, 54 F.4th 201, 211 (4th Cir. 2022) (quoting *Bazemore v. Best Buy*, 957 F.3d 195, 200 (4th Cir. 2020)).  The Plaintiff must also allege that her protected characteristic under Title VII was the "but for" cause of the alleged harassment.  *Id.*; *see also Young v. Giant Food Stores, LLC*, 108 F. Supp. 3d 301, 310 (D. Md. 2015) (finding that the plaintiff must also allege facts to present a particularized basis for alleging that discriminatory conduct was because of membership in a protected class).  In addition, the Plaintiff must show that she administratively exhausted her hostile work environment claims before bringing this civil action.  42 U.S.C. § 2000e-5(f)(1) (Title VII requires that a plaintiff file a charge of discrimination with the EEOC before filing suit in this Court.).

The Court is satisfied that the Plaintiff has met these requirements for two reasons.  First, the Plaintiff has shown that she administratively exhausted her hostile work environment claims, because the Plaintiff's Charge put LeafGuard on notice of her concerns about Mr. Gentry-Coyler's alleged discriminatory conduct.  *Miles v. Dell, Inc.*, 429 F.3d 480, 491 (4th Cir. 2005).

---

[5] To the extent the Plaintiff asserts Title VII discrimination claims based upon race, color and/or sex, in this case, the Plaintiff also fails to allege to show a satisfactory job performance at the time of the adverse employment action, to support these claims.

The Plaintiff filed her Charge with the EEOC on February 3, 2023.  ECF No. 18 at ¶ 6.  In the Charge, the Plaintiff alleges that she was subjected to discrimination upon the basis of her race, color, sex and pregnancy and to retaliation.  *See generally id.*; ECF No. 29 at 4.  The Plaintiff also states in the Charge that,

> From the moment [Mr. Gentry-Coyler] became the General Manager in July, I was subjected to numerous racist and sexist remarks and gestures from [Mr. Gentry-Coyler]. . . . At first I was hesitant to disclose my pregnancy to [LeafGuard] because there had been a recent history of sexist and racist commentary from [Mr. Gentry-Coyler].

ECF No. 29 at 4.  In the amended complaint, the Plaintiff similarly alleges that Mr. Gentry began to subject her to racist and sexist remarks and gestures shortly after he became the General Manager for LeafGuard's Washington, DC branch in July 2022, and that this harassing conduct continued until her termination.  ECF No. 18 at ¶ 23.  The Plaintiff also alleges in the amended complaint that Mr. Gentry-Coyler: (1) engaged in discriminatory conduct "at a job site, while [the Plaintiff] was carrying a ladder, . . .[and] commented 'women can't do that'"; (2) "expressed incredulity about a Black female being in the construction industry"; and (3) "told other employees [that the Plaintiff's ] first name, LaRecia, was a 'black ghetto name.'"  *Id.*  In addition, the Plaintiff states that the aforementioned conduct is only an example of the ongoing discriminatory conduct by Mr. Gentry-Coyler during the summer and fall of 2022.  *Id.* at ¶¶ 25–26.

While the Plaintiff's Charge neither contains the words "hostile work environment," nor these specific factual allegations discussed above, the Court is satisfied that these claims could have been discovered by LeafGuard through a reasonable investigation of the Plaintiff's Charge. *Garcia v. Baltimore Police Dep't*, No. 22-1423, 2023 WL 3043953, at \*5 (D. Md. Apr. 21, 2023) (while "[c]ourts do not require a plaintiff to have invoked a hostile work environment claim by name or to use specific 'magic words' in order to exhaust it . . . the plaintiff must offer at least some suggestion of a hostile work environment in the charge narrative, such as by referring to an ongoing pattern of conduct or describing a workplace pervaded by abuse." (quoting *Gaines v. Balt. Gas Dep't*, No. 21-1211, 2022 WL 1451629, at \*8 (D. Md. May 9, 2022)).  And so, the Plaintiff has administratively exhausted her hostile work environment claims.

Second, the Court is also satisfied that the Plaintiff states plausible claims for a hostile work environment in the amended complaint.  As discussed above, to state a hostile work

environment claim, the Plaintiff "must offer facts that plausibly support inferences that 'she was subjected to (1) unwelcome conduct, (2) based on her race [or national origin] or sex, that was (3) severe or pervasive enough to make her work environment hostile or abusive and (4) imputable to [] her employer.'" *Marie Laurent-Workman*, 54 F.4th at 211 (quoting *Bazemore v. Best Buy*, 957 F.3d 195, 200 (4th Cir. 2020)).  In this regard, the Court considers the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 211.  The Plaintiff must also allege that her protected characteristic under Title VII was the "but for" cause of the alleged harassment.  *Id.* at 200.

Here, the amended complaint makes clear that the Plaintiff alleges facts to show that she was subjected to unwelcome conduct, because she alleges that "at a job site, while [the Plaintiff] was carrying a ladder, . . .[and] commented 'women can't do that'"; (2) "expressed incredulity about a Black female being in the construction industry"; and (3) "told other employees [that the Plaintiff's ] first name, LaRecia, was a 'black ghetto name.'"  ECF No. 18 at ¶ 23.  In addition, the Plaintiff states that the aforementioned conduct is only an example of the ongoing comments made by Mr. Gentry-Coyler during the summer and fall of 2022.  *Id.* at ¶¶ 25–26.  The Plaintiff also alleges facts to show that Mr. Gentry-Coyler's unwelcome conduct was based on her race, color and/or sex, because she alleges that the examples and ongoing comments were made in particular to her being Black and a woman.  *Id*. at ¶ 25.

In addition, the Plaintiff alleges facts to show that the conduct at issue was severe or pervasive enough to make her work environment hostile or abusive, because she alleges that the racist and sexist remarks started from when Mr. Gentry-Coyler became the General Manager and continued after she confronted Mr. Gentry-Coyler regarding the racist and sexist remarks and continued after the alleged retaliation from Mr. Gentry-Coyler.  *Id*. at ¶¶ 23–30.  Lastly, the Plaintiff alleges facts to show that the conduct was imputable to LeafGuard, because she alleges that Mr. Gentry-Coyler was her supervisor at LeafGuard and LeafGuard was made known of the conduct.  *Id*. at ¶¶ 16, 22, 23 and 30.

Given this, the Court declines to dismiss the Plaintiff's Title VII hostile work environment claims in Counts II and III of the amended complaint.  And so, the Court DENIES LeafGuard's motion on these claims.

15

### D.    The Plaintiff States Plausible Retaliation Claims

As a final matter, the Court also declines to dismiss the Plaintiff's retaliation claims in Counts IV, V and VI of the amended complaint.  To establish a *prima facie* case of retaliation under Title VII and the PDA, the Plaintiff must allege facts to show that: (1) she engaged in a protected activity, (2) LeafGuard acted adversely against her, and (3) her protected activity was causally connected to the adverse action.  *Clarke v. DynCorp Int'l LLC*, 962 F. Supp. 2d 781, 789 (D. Md. 2013) (citing 42 U.S.C. § 2000e–3).  In this regard, the Fourth Circuit has held that, "in the context of a retaliation claim, a 'protected activity' may fall into two categories, opposition and participation."  *E.E.O.C. v. Navy Fed. Credit Union*, 424 F.3d 397, 406 (4th Cir. 2005).

Given this, "[a]n employer may not retaliate against an employee for participating in an ongoing investigation or proceeding under Title VII, nor may the employer take adverse employment action against an employee for opposing discriminatory practices in the workplace." *Parker v. Children's Nat'l Med. Ctr., Inc.*, No. 20-3523, 2021 WL 5840949, at \*21 (D. Md. Dec. 9, 2021) (quoting *Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998)).  "[T]o fall under the protection of the opposition clause . . . behavior need not rise to the level of formal charges of discrimination.  And so, the opposition clause has been held to encompass informal protests, such as voicing complaints to employers or using an employer's grievance procedures."  *Id.* (quoting *Armstrong v. Index J. Co.*, 647 F.2d 441, 448 (4th Cir. 1981)).[6]  The Plaintiff must also show that a reasonable employee would have found the challenged action "materially adverse," which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.  *Herkert v. Kijakazi*, No. 22-03139, 2024 WL 1050831, at \*6 (D. Md. Mar. 11, 2024) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).

In the amended complaint the Plaintiff asserts retaliation claims based upon her pregnancy, sex, race and/or color.  ECF No. 18 at ¶¶ 68–80.  With regards to her PDA retaliation claim, the Plaintiff alleges facts to show she engaged in a protected activity, because the Plaintiff alleges

---

[6]The Fourth Circuit has held that, "[f]or an employee's activity to constitute protected 'opposition,' she must show (1) that she reasonably believed that the employment action she opposed constituted a Title VII violation, and (2) that her conduct in opposition was reasonable."  *Parker v. Children's Nat'l Med. Ctr., Inc.*, No. 20-3523, 2021 WL 5840949, at \*21 (D. Md. Dec. 9, 2021) (quoting *Netter v. Barnes*, 908 F.3d 932, 937–38 (4th Cir. 2018)).

16

that she notified her supervisors about her pregnancy on October 5, 2022. *Id.* at ¶ 31. The Plaintiff also alleges that this notification occurred within the context of her making complaints about Mr. Gentry-Coyler's alleged discriminatory and harassing conduct. *Id.* at ¶ 30 (alleging that the Plaintiff informed her local supervisor that she was experiencing discrimination by Mr. Gentry-Coyler, and LeafGuard assured the Plaintiff that the matter would be investigated on September 6, 2022); *see also Parker*, 2021 WL 5840949, at *21.

In addition, the Plaintiff also alleges facts to show that LeafGuard acted adversely against her, because she alleges that LeafGuard terminated her employment on November 16, 2022. ECF No. 18 at ¶ 36. Lastly, the Plaintiff alleges facts to show that her protected activity was causally connected to this adverse employment action, because the Plaintiff alleges that LeafGuard terminated her employment just six weeks after she provided notice of her pregnancy. *Id*. Given this, the Court is satisfied that the Plaintiff has plausibly alleged a PDA retaliation claim in this case. And so, the Court DENIES LeafGuard's motion to dismiss this claim.

The Court is also satisfied that the Plaintiff states a retaliation claim based upon sex, race and/or color under Title VII in this case. In the amended complaint, the Plaintiff alleges that she engaged in protected activity: (1) on or about September 6, 2022, when she informed LeafGuard about Mr. Gentry-Coyler's conduct; and (2) on October 26 and 27, 2022, when the Plaintiff had a series of calls with LeafGuard representatives about her sex and race discrimination complaints. ECF No. 18 at ¶¶ 30 and 35. As discussed above, the Plaintiff has also alleged facts to show an adverse employment action, because she alleges that LeafGuard terminated her employment on November 16, 2022. *Id.* at ¶ 36.

Lastly, the Plaintiff alleges facts to show a causal connection between her protected activity and termination, because she alleges that her protected activity occurred approximately six weeks before she was terminated by Mr. Gentry-Coyler. *Id.* And so, the Court also DENIES LeafGuard's motion to dismiss the Plaintiff's Title VII retaliation claims in Counts V and VI of the amended complaint.

## V.    CONCLUSION

For the foregoing reasons, the Court:

      (1) **GRANTS-in-PART** and **DENIES-in-PART** LeafGuard's motion to dismiss (ECF No. 22); and

      (2) **DISMISSES** Count I of the amended complaint (ECF No. 18).

17

LeafGuard shall **ANSWER,** or otherwise **RESPOND** to, the remaining claims in the amended complaint on or before **April 19, 2026**.

IT IS SO ORDERED.

s/ Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
United States District Judge

18